UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:03CV30-02-V
(3:98CR246-02-V)


STEVEN DONEWAN CARR,             )
    Petitioner,              )
                                 )
       v.                     )          O R D E R
                                 )
UNITED STATES OF AMERICA,        )
    Respondent.              )
_____)


      **THIS MATTER** is before the Court on the petitioner's "Petition
Under 28 U.S.C. §2255 To Vacate, Set Aside, Or Correct Sentence
. . . " (document # 1), filed March 5, 2003; on the "United States'
Response To Petition And Motion To Dismiss" (document # 5), filed
June 2, 2003; and on the petitioner's "Motion For Leave To Amend
§2255 Petition" (document # 14), filed August 25, 2005.

      After careful consideration of the foregoing, for the reasons
stated herein, the Court has determined that the petitioner's
Motion for Leave to Amend must be <u>denied</u>; that the government's
Motion to Dismiss must be <u>granted</u>; and that the petitioner's Motion
to Vacate must be <u>denied</u> and <u>dismissed</u>.

### I.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

      According to the record, on January 12, 1999, a Superceding

Bill of Indictment was filed, charging the petitioner and another individual with several violations of federal law. In particular, the petitioner was charged with having conspired--with Paul Bines and others, both known and unknown to the Grand Jury--to possess with intent to distribute, and to distribute quantities of cocaine base, in violation of 21 U.S.C. §§841 and 846 (Count I). The petitioner also was charged with two counts of aiding and abetting the possession with intent to distribute cocaine base, all in violation 21 U.S.C. §841(a)(1) and 18 U.S.C. 2 (Counts IV and V). In addition, the petitioner was charged with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §841(a)(1) (Count VI).

Upon his arrest, the petitioner appeared before the Court and entered "not guilty" pleas to the subject charges. Then, after obtaining at least two continuances, the petitioner's trial was commenced on July 19, 1999.

During his trial, the government presented evidence which showed, among other things, that in December 1997, law enforcement officers began investigating suspected drug traffickers in and around the Statesville, North Carolina area. That investigation revealed evidence which tended to show that the petitioner was a high-level drug dealer who had trafficked in cocaine base ("crack" hereafter) from about February until April 1998. The petitioner's major suppliers of powder cocaine were individuals based in New

York, New Jersey, Virginia and Charlotte, N.C.

More specifically, over the course of their investigation, authorities developed a confidential informant who assisted their investigation by making controlled drug purchases from suspected drug dealers. To that end, on February 7, 1998, the confidential informant made a controlled purchase of $100.00 in crack from the petitioner's co-defendant, Paul Bines. Four days later, the informant purchased $300.00 worth of crack from Bines. Then, around the beginning of March 1998, the informant made a one-ounce purchase of crack from Bines. After that sale, Bines was arrested and he agreed to cooperate with the authorities. Significantly, the subject investigation led the authorities to the petitioner.

That is, during the course of an interview with Bines, he informed investigators that he had known the petitioner since 1995 when the two were incarcerated together; and that he and the petitioner had begun conducting drug deals together in February 1998. At trial, Bines explained to the jury that he had purchased a total of between four to five ounces of crack from the petitioner on eight or nine occasions; that he often paid the petitioner between $500.00 and $1,000.00 for each transaction, but sometimes the petitioner gave him the drugs on consignment; that those transactions occurred prior to his having agreed to cooperate with authorities; and that he had observed the petitioner "cooking" powder cocaine into crack on more than one occasion.

The government's evidence further showed that after beginning his cooperation with the authorities, on March 5, 1998, Paul Bines made two separate controlled purchases of crack from the petitioner in the total amount of 32.6 grams. During one of those sales, the petitioner told Bines that he owed more than $11,000 to his New York supplier for a kilogram-sized shipment of cocaine which had been consigned to him. The petitioner also told Bines that he had $2,000 worth of crack "cut up already," and he would have another $2,000 worth of crack available that night." Such conversations were recorded by the authorities.

The evidence further showed that on March 6, 1998, Bines introduced an undercover officer to the petitioner. On that occasion, the officer gave the petitioner $3,700, part of which was a "good faith" payment. On the following day, the officer received slightly less than an ounce of crack directly from the petitioner. At the time of that sale, the petitioner told the officer that he could get him an additional ounce or two of crack on that day; and that within a day or so, he could get the officer another 10 ounces of crack. The petitioner also disclosed that one of his suppliers had 18 ounces of cocaine for him; that another of his suppliers in Charlotte had 11 ounces of crack which he could get for the officer; and that he also could get the officer at least 30 additional ounces of crack--in ten ounce installments--in the future.

Following that last undercover transaction, authorities executed a search warrant at the petitioner's residence. That search resulted in the discovery of just under $10,000 in cash-- $3,900 of which were marked bills from the Statesville Police Department's Narcotics Fund.

Notwithstanding the foregoing problems in which the petitioner found himself, by June 25, 1998, another confidential informant was able to purchase a small amount of crack at the petitioner's residence. Consequently, on July 2, 1998, the petitioner was arrested. On that occasion, a second search warrant was executed at the petitioner's home. That time, the authorities found 29.6 grams of crack and a small amount of powder cocaine and more than $3,400 in cash. The authorities also found various other items which are used in the drug trafficking business.

Paul Bines also testified about having observed the petitioner cooking powder cocaine into crack on at least one occasion; that the petitioner's girlfriend had discussed a location where the petitioner kept some of his crack; and that the girlfriend was a co-conspirator with the petitioner. Officer Sean Elliott also testified about having observed what appeared to him to have been a crack sale between the petitioner's girlfriend and another man.

Last, the government produced evidence concerning the petitioner's unexplained wealth; and it produced testimony pursuant to Federal Rule of Civil Procedure 404(b) from a law enforcement

officer.  Such testimony established that the petitioner had been involved with large-scale drug trafficking as long ago as 1995; and that his source for those earlier transactions had been a Colombian who was known to the petitioner as "George."

Once the government rested its case, the petitioner declined to put on any evidence in his defense.  Instead, counsel for the petitioner made an oral motion for a judgment of acquittal.  However, that motion was denied.  Thereafter, the jury deliberated and found the petitioner guilty of all of the charges which he was facing.

Accordingly, on December 16, 1999, the Court conducted a Sentencing Hearing in this matter.  On that occasion, the petitioner, through counsel, maintained his innocence to the conspiracy charge, but acknowledged that the jury had reached a different conclusion.  Defense counsel also asserted that several of the convictions in the petitioner's Pre-Sentence Report ("PSR" hereafter) were invalid and/or overstated the seriousness of his criminal history.  However, the Court overruled all of the above objections, and found that the petitioner was subject to sentencing on the basis of the information in his PSR.

Next, the Court determined, notwithstanding any drug amounts which could be applied, that the petitioner was a Career Offender, with an Offense Level of 37.  However, based upon the determination that petitioner was involved with at least 1.5 kilograms of crack,

the Court further determined that his total Offense Level was 38; and that his Criminal History Category was VI, thereby exposing him to a term of 360 months to life imprisonment.  At that point, defense counsel asked for leniency, but the petitioner declined to make a statement on his own behalf.

The government next argued that both the extent and the nature of the petitioner's criminal history warranted a 360-month sentence.  Ultimately, the Court sentenced the petitioner to a term of 360 months imprisonment on Count I, and to concurrent 360-month terms on each of Counts IV, V and VI.

Following the Sentencing Hearing, defense counsel timely noted an appeal to the Fourth Circuit Court of Appeals.  On appeal, the petitioner challenged his convictions and sentences arguing, _inter alia_, that the evidence was insufficient to support his conspiracy conviction because Paul Bines was a government agent who could not have conspired with him.  United States v. Carr, No. 00-4000, slip op. at 2 (4th Cir. Sept. 26, 2000) (unpub'd.).  Although the appellate Court "reviewed the record and f[ou]nd that substantial evidence support[ed] Carr's conviction for conspiracy," the Court further found that the then-recently decided case of Apprendi v. New Jersey, 530 U.S. 466 (2000)[1] rendered the petitioner's sentence invalid.  Id.

---

[1]As is now well understood, the Apprendi case announced the rule that except for "the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.

Specifically, the Court of Appeals noted that since the Indictment under which the petitioner was convicted did not allege specific drug amounts, the petitioner could not be sentenced to more than a total of 20 years imprisonment on any one individual Count for which he stood convicted. Id. As a consequence, the Court of Appeals affirmed the petitioner's convictions, but vacated his sentences and remanded his case for re-sentencing. Id.

Therefore, on September 10, 2001, this Court conducted a Re-Sentencing Hearing for the petitioner. During that Hearing, the petitioner's newly retained attorney argued that the petitioner's Offense Level had been inaccurately calculated and, therefore, had to be adjusted downward from Level 38 to 32, which adjustment would have yielded a sentence of 210 to 262 months imprisonment.

In response, however, the government argued that using: (1) the pre-cooperation drug amounts which the petitioner sold to Bines; (2) the amounts which he delivered to and/or discussed (on tape) with the undercover officer; and (3) the amounts he caused to be delivered, would support a finding of his involvement with at least 1.5 kilograms of crack cocaine. The government further argued that such proffered amounts did not even take into consideration the drugs which the petitioner discussed on tape with Paul Bines, the drugs which were seized from the petitioner's car after he already had been arrested, or the value of the drug proceeds which were seized from his residence.

The government also asserted that petitioner should not have been allowed to challenge its evidence concerning drug quantities, in any event, since he had not earlier attempted to do so. That is, the petitioner previously had done no more than deny all wrongdoing in his case.

Unlike his first Sentencing Hearing, this time the petitioner accepted the invitation to address the Court. During his allocution, the petitioner made numerous rambling assertions, including that one of the tape recordings had been "tampered with"; that the tapes did not, in any case, establish his involvement in drug deals; that no one else could establish that he, in fact, ever had sold drugs; and that his criminal history, which primarily had been limited to convictions for breaking and entering and larcenies, tended to establish that he was not a drug dealer.

Nevertheless, the Court reaffirmed its earlier determination that in excess of 1.5 kilograms of crack cocaine could be attributed to the petitioner for sentencing purposes. The Court also concluded that under §5G1.2(d) of the Sentencing Guidelines, the applicable sentencing range for Count I was a minimum of 360 months imprisonment; and that under the statutes, the maximum terms of imprisonment for each count individually was 20 years imprisonment. Based upon those conclusions, therefore, the Court sentenced the petitioner to a term of 240 months imprisonment on Count I; and to 60-month terms on each of Counts IV and V, to run concurrently to

each other but consecutively to the 240-month term. The Court also sentenced the petitioner an additional consecutive 60-month term on Count VI, for a total of 360 months imprisonment.

The petitioner again appealed his case to the Fourth Circuit Court of Appeals. In his second appeal, the petitioner argued that the trial Court had erred in calculating his sentence, particularly in concluding that he could be held accountable for involvement with at least 1.5 kilograms of crack. See <u>United States v. Carr</u>, No. 01-4740, slip op. at 2 (4th Cir. May 17, 2002)(unpub'd.). That time, however, the appellate Court affirmed the petitioner's sentence upon its finding that the trial Court's determinations concerning both the amount of drugs and the corresponding offense level were not clearly erroneous. <u>Id</u>.

On March 5, 2003, the petitioner returned to this Court on the instant Motion to Vacate. By this Motion, the petitioner raises several arguments, particularly that: (1) the evidence was insufficient to support his conspiracy conviction; (2) that the trial Court erroneously treated the drug quantity as a sentencing factor, rather than an essential element of the offense, in violation of <u>Apprendi</u> and its progeny; (3) that the trial Court erred in calculating his sentence on the basis of his involvement with at least 1.5 kilograms of crack; (4) that the Court also constructively amended the Indictment by sentencing him on the basis of involvement with at least 1.5 kilograms of crack; and (5)

that he actually is innocent of the Career Offender status which was applied to him. The petitioner also sets forth a claim under the heading of "Defective indictment/Element missing/Drug Quantity/Multiplicitous indictment/Government Evidence Constructively Amended Indictment"; and he alleges that his attorney was ineffective for having failed to raise the foregoing claims.

On May 2, 2003, the "United States' Response To Petition And Motion To Dismiss" was filed. By that combined document, the government asserts that each of the petitioner's claims relating to the sufficiency of the evidence supporting his conspiracy conviction and to the Court's calculation of his sentence already has been flatly rejected by the appellate Court; therefore, he cannot now re-litigate those matters.

The government further contends that the petitioner's conclusory challenge to his Career Offender designation is baseless; and that his <u>Apprendi</u>-based claims erroneously are based upon his misapprehension of the law. Lastly, the government argues that in light of the foregoing, the petitioner cannot possibly establish an entitlement to relief on his claims against counsel.

On July 3, 2003, the petitioner filed a Response to the government's pleading. That response seeks to challenge the government's arguments in its Response/ Motion To Dismiss. In addition, the petitioner has filed a second Motion for Leave to Amend his Motion to Vacate. However, the Court has found that the

petitioner's Motion for Leave to Amend must be <u>denied</u>; and his Motion to Vacate must be <u>denied</u> and <u>dismissed</u>.

## II.  <u>ANALYSIS</u>

1.  <u>The petitioner's challenges to the suffi-
ciency of the evidence for his conspiracy
conviction and his challenges relating to
the calculation of his sentences all are
squarely foreclosed by the appellate
Court's rejection of those matters</u>.

During his first appeal, the petitioner specifically argued that the evidence was insufficient to support his conviction for his having conspired with Paul Bines.  However, as was previously noted, the appellate Court expressly stated that it had "reviewed the record and f[ou]nd that substantial evidence support[ed the petitioner's] conviction for conspiracy."  <u>United States v. Carr</u>, No. 00-4000, slip op. at 2 (4th Cir. Sept. 26, 2000).

During his second appeal, the petitioner argued that the trial Court had erred in calculating his sentence on the basis of his involvement with 1.5 kilograms of crack.  Once again, however, the appellate Court approved of this Court's determinations regarding both the drug quantity and its assignment of Offense Level 38 for the petitioner.  <u>United States v. Carr</u>, No. 01-4740, slip op. at 2 (4th Cir. May 17, 2002).

Inasmuch as it is well settled that in the absence of a favorable, intervening change in the law which can be applied on collateral review, a petitioner simply is not free to re-litigate claims which already were rejected on direct review.  <u>Davis v.</u>

**12**

<u>United States</u>, 417 U.S. 333, 342 (1974); <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182 (4th Cir.), <u>cert. denied</u>, 429 U.S. 863 (1976). Accordingly, since the petitioner has not directed the Court's attention to any intervening change in the law which would authorize him to reassert his claims of insufficient evidence (Claim One), or sentencing calculation errors (Claims Three and Four), those matters are procedurally barred.

Moreover, to the extent that the appellate Court's affirmation of the petitioner's sentence in its totality does not put to rest his fifth claim (that he was erroneously designated a Career Offender since he only had one qualifying conviction), the Court finds that such additional claim still must fail.

To begin with, the petitioner did not object to that designation at sentencing which was his first opportunity to have raised that challenge. Consequently, it is likely that this claim is procedurally defaulted in any event. See <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492-93 (4th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1010 (2000) (discussed <u>infra</u>).

More critically, this Court has reviewed the petitioner's Pre-Sentence Report and determined that at the time he was sentenced, the petitioner, in fact, had <u>at least</u> two qualifying convictions-- one in 1989 for breaking and entering and one in 1992 for assaulting a government official. The petitioner also had a 1995 breaking and entering conviction.

In addition, the petitioner's Career Offender score of Offense Level 37 actually is irrelevant since the Offense Level for involvement with at least 1.5 kilograms of crack (Offense Level 38) was used to calculate his sentence. Thus, since the appellate Court found that determination to have been proper, the petitioner still could not prevail with this claim even if it were not procedurally defaulted.

## 2. **The petitioner's Apprendi-based claim also must fail**.

The petitioner also claims that this Court constructively amended the Indictment, and erroneously treated the drug quantity as a sentencing factor, all in violation of the rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000). However, the Court of Appeals reviewed the petitioner's case under the Apprendi standard during his first appeal, and found only that the Court had erred in imposing 360-month terms on each of the petitioner's convictions. Thus, any Apprendi-based error which was committed already was corrected at the petitioner's second sentencing hearing.

In addition, and equally important, it now is clear that the rule announced in Apprendi, and further established by its progeny --Blakely[2] and Booker/ Fanfan--is not applicable in collateral

---

[2] In Blakely v. Washington, 542 U.S. 296 (2004), the Court held that for Apprendi purposes, the statutory maximum term is the "maximum sentence the judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." In United States v. Booker/Fanfan, 543 U.S. 220 (2005), the Court held, in part, that the rule announced in Blakely is applicable to federal defendants who are sentenced under the U.S. Sentencing Guidelines.

proceedings such as these. <u>See</u> <u>United States v. Sanders</u>, 247 F.3d 139 (4th Cir.) (holding that <u>Apprendi</u> is not retroactively applicable to cases which are before the Court on collateral review), <u>cert. denied</u>, 534 U.S. 1032 (2001); <u>and</u> <u>United States v. Morris</u>, 429 F.3d 65, 72 (4th Cir. 2005) (holding that <u>Booker</u> also is not retroactively applicable on collateral review). <u>See also</u> <u>United States v. Fowler</u>, No. 05-6493, slip op. at 1 (W.Va. June 17, 2005) (holding that "neither <u>Booker</u> nor <u>Blakely</u> announce a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.").

### 3. **The petitioner's claim of "Defective indictment/Element missing/Drug Quantity/Multiplicitous indictment/Government Evidence Constructively Amended Indictment" also must fail**.

As best as the Court can determine, by this claim the petitioner seeks to allege that the Indictment was defective for its failure to set forth a specific quantity; and that the government constructively amended the subject Indictment by having offered evidence to establish a drug quantity. Those allegations, however, must fail.

First, the record clearly establishes that the petitioner did <u>not</u> raise, but clearly could have raised, this convoluted claim in either of his two direct appeals. In <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492-93 (4th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1010 (2000), the Court pointed out that "[i]n order to collaterally

attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." Id., citing United States v. Frady, 456 U.S. 152 (1982); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge a matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); and Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

Question 13 on the Motion to Vacate form which the petitioner submitted directed him to identify any of his claims which were not previously raised and explain why they were not raised. In response to that question, the petitioner did not even bother to specifically identify this claim as one which had not been raised on appeal, but merely stated that "the appellant's counsel was ineffective for not presenting all these new issues before trial and re-sentencing." Based upon the foregoing, the Court finds that the petitioner has failed actually to acknowledge that this claim was not raised on appeal.

Much more, the petitioner has failed to establish either cause and prejudice or a potential miscarriage of justice in connection with this claim. Indeed, even to the extent that the petitioner might attempt to get around his procedural default by claiming that

counsel's failure to raise the matter constitutes cause, he still cannot establish any resulting prejudice. Rather, inasmuch as the law did not require, at the time that the petitioner was prosecuted, that drug quantities be included in the Indictment, counsel could not have been ineffective in that regard. The petitioner cannot establish that he was prejudiced by counsel's decision not to raise a challenge which would have been baseless at that time.

That is, this Court is well aware that at the time that the petitioner was tried, convicted and sentenced, drug quantities were not elements of the offense, but were considered sentencing factors which the government needed to prove only by a preponderance of the evidence. See, e.g., United States v. Dorlouis, 107 F.3d 248, 252 (4th Cir. 1997); United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996); and United States v. Heater, 63 F.3d 311, 322 (4th Cir. 1995).

Furthermore, counsel could not have been deficient for not challenging the Court's method of calculating the drug quantity inasmuch as its calculations were consistent with the manner in which sentences were calculated, both prior to and immediately after the Apprendi decision was announced. See United States v. Kinter, 235 F.3d 192, 201 (4th Cir. 2000), cert. denied, 532 U.S. 937 (2001). Therefore, the petitioner cannot avoid his procedural default in this case.

3. **The petitioner's claims that counsel was ineffective for having failed to raise**

**the above claims must be summarily rejected**.

Last, the petitioner alleges that counsel was ineffective for having failed to raise the foregoing issues.  When alleging a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen'l. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

To demonstrate prejudice, the petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions."  <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986), <u>citing</u> <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).  Under these circumstances, then, the petitioner "bears the burden of proving <u>Strickland</u> prejudice."  <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31.  Therefore, if the petitioner fails to meet this burden, a "reviewing court need not consider the

performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

A review of the record reflects that the petitioner's first four claims were, in fact, addressed on direct appeal. Therefore, the petitioner certainly cannot demonstrate either a deficiency or prejudice in connection to those matters. Similarly, to the extent that the appellate Court found that this Court had correctly calculated the petitioner's sentence, and the Career Offender designation did not impact his sentence, he cannot demonstrate a deficiency on the part of counsel with respect to his fifth claim.

Last, with regard to the petitioner's claim that counsel was ineffective for having failed to challenge the Indictment on <u>Apprendi</u> grounds, this Court already has determined that such allegation is baseless in that there simply was no requirement for indictments to allege drug quantities at the time that the petitioner's case was being tried in this Court. Once again, therefore, counsel could not have been deficient for failing to raise such baseless claim.

### 4. **The petitioner's proposed informal amend-ments must be rejected**.

Finally, on August 25, 2005, the petitioner filed a document captioned as a "Motion For Leave To Amend §2255 Petition F.R.Civ.P. Rule 15(c)." In that Motion, the petitioner essentially reasserts his first claim, arguing that this Court had erred in denying his request for a limiting instruction concerning his ability to

conspire with a government agent; that the Court should apply "Clarifying Amendment 667" in order to reduce his offense level; and that counsel was ineffective for having failed to raise an Apprendi-type challenge to the calculation of his sentence because too great a quantity of drugs was attributed to him. Even assuming that the foregoing claims are not time-barred, the petitioner still cannot prevail on them.

Rather, as has been noted, the petitioner's challenge to the sufficiency of the evidence supporting his conviction for having conspired with Paul Bines already was flatly rejected by virtue of the appellate court's determination that "substantial evidence" supported that conviction.

Moreover, the basis for this claim is baseless. That is, the government charged the petitioner and Paul Bines with having conspired with each other and with "others, both known and unknown to the Grand Jury." Therefore, even if the Court had excluded evidence of the petitioner's dealings with Paul Bines after he agreed to cooperate, the evidence of his pre-cooperation dealings with Bines was sufficient to establish a conspiracy. As such, there was no basis for the Court to give the limiting instruction which the petitioner had requested.

Concerning his claim about "Clarifying Amendment 667," the Court has determined that such proposed claim also cannot carry the day for the petitioner. Indeed, the petitioner asks to amend his

Motion to Vacate in order to include a request that this Court apply Amendment 667 to Application Note 12 of U.S. Sentencing Guidelines §2D1.1. The petitioner believes such application would require a reduction in his criminal history calculations. However, no such reduction is warranted here.

Among other things, Amendment 667--which was passed in November 2004--revises Application Note 12 to provide that courts must exclude from a defendant's offense level calculations any drug amounts which that defendant establishes that he did not intend to provide <u>or purchase</u>, or was not reasonably capable of providing <u>or purchasing</u>. The Guidelines explain that the purpose of the subject Amendment was to treat sellers <u>and</u> buyers equally, since prior to the Amendment a Court was only required to exclude amounts which a defendant-seller could show that he did not intend to provide, or was not reasonably capable of providing.

In any event, the proposed Amendment is of little consequence here. First, the petitioner has failed to point to a single case that stands for the proposition that district courts are required to apply this amendment in the collateral review context as is the case here. Furthermore, in <u>Mikalajunas</u>, (<u>supra</u>) (<u>citing</u> <u>Burke v. United States</u>, 152 F.3d 1329, 1331-32 (11th Cir. 1998), the Fourth Circuit noted that not even a sentence imposed contrary to a subsequently passed clarifying amendment to the Guidelines constituted a miscarriage of justice sufficient to excuse proce-

dural default.  Consequently, this Court can hardly imagine that such a claim could justify the grant of collateral relief if it cannot even satisfy the "miscarriage of justice" standard in order to justify collateral review in the first place.

Second, Amendment 667 did not clarify or otherwise change the part of Application Note 12 upon which the petitioner seeks to rely.  That is, by his proposed claim, the petitioner seeks to argue that his offense level should be reduced because it is "abundantly clear that [he] was not capable of providing . . . " all of the drugs for which the Court held him accountable (emphasis added).  However, at the time that the petitioner was sentenced and re-sentenced, Application Note 12 already directed courts to exclude drug amounts which he, as a defendant-seller, was able to effectively disavow.  As was noted above, the Amendment merely served to provide the same reduction for defendant-buyers. Consequently, there simply is no new provision to apply for the petitioner.

As to his final proposed claim, this Court already has put to rest all of the petitioner's attempts to rely upon the Apprendi case as a basis for obtaining collateral relief.  Therefore, there simply is no good reason to allow the petitioner to amend his Motion to Vacate to include either this reincarnated Apprendi/ ineffective assistance of counsel claim, or his other two proposed claims.  Rather, it is well settled that "[a] court may refuse to

allow leave to amend when the proposed changes would be futile." <u>New Beckley Mining Corp. v. Int'l Union</u>, 18 F.3d 1161, 1164 (4th Cir. 1994); <u>accord</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Accordingly, the petitioner's Motion for Leave to Amend will be <u>denied</u>.

### III.  <u>CONCLUSION</u>

On this record, the Court finds that the petitioner's claims all must be denied and dismissed--either on the basis of their foreclosure by the appellate Court, his procedural default of them, and/or the absence of a legal basis to support them.  Furthermore, the petitioner has failed to demonstrate that he should be allowed to proceed on either of his proposed claims.  Consequently, the Court concludes that it must <u>deny</u> the petitioner's Motion for Leave to Amend; and that it must <u>grant</u> the government's Motion to Dismiss.

### IV.  <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.  That the petitioner's Motion for Leave to Amend (document # 14) is **DENIED;**

2.  That the government's Motion to Dismiss (document # 5) is **GRANTED;** and

3.  That the petitioner's Motion to Vacate (documents # 1) is **DENIED** and **DISMISSED.**

The Clerk shall send copies of this Order to the

petitioner and to the United States Attorney.

**SO ORDERED.**

Signed: April 5, 2007

Richard L. Voorhees
United States District Judge